**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| MICHAEL MCCANN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No.: 4:25-5640-MGL |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION IN PART**
**AND DECLINING TO ADOPT IT IN PART,**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION TO DISMISS,**
**AND DENYING PLAINTIFF'S MOTION TO STRIKE**

## I. INTRODUCTION

Plaintiff Michael McCann filed this action against the government arising out of the admittedly brutal violence he suffered at the hands of his cellmate while incarcerated at Federal Correctional Institution Edgefield (FCI). Pursuant to the Federal Tort Claims Act (FTCA), McCann brings this negligence cause of action seeking damages. This Court has jurisdiction pursuant to 28 U.S.C. § 1346(b).

This matter is before the Court for review of the Report and Recommendation (the Report) of the United States Magistrate Judge suggesting to the Court the government's motion to dismiss be granted in part and denied in part. The Report was made in accordance with 28 U.S.C. § 636

and Local Civil Rule 73.02 for the District of South Carolina. Also before the Court is McCann's motion to strike the government's objections to the Report.

## II. FACTUAL AND PROCEDURAL HISTORY

While at FCI McCann was housed in the Special Housing Unit (SHU), and on August 4, 2023, he "was found unresponsive in his cell after a brutal and vicious assault." Compl. ¶¶ 10-11. He had been unconscious "for an unknown period of time" before FCI employees found him at "approximately 2:00PM" and then, for unexplained reasons, they administered Narcan "at 2:00pm, 2:12pm, and 2:15pm, with no response noted." Compl. ¶ 11. He "was not transported to medical until approximately 2:20pm." Compl. ¶ 12. Medical staff then observed extensive and severe injuries unnecessary to repeat here. McCann alleges he "still suffers, and will for the rest of his life, from the debilitating effects of this attack and injuries suffered." Compl. ¶ 16.

McCann now claims the government's negligence "directly contributed to [his] pain, suffering, injuries, and permanent disability and impairment." Compl. ¶ 17. As required, McCann first proceeded to administrative review, filing a tort claim with BOP on Standard Form 95. Compl. ¶ 5. His claim is more fully set out below, but the primary allegation is "staff, correctional officers, supervisors and/or administrators not only failed to properly monitor the SHU, but failed to properly supervise inmates and have proper checks." Compl. Ex. 1 at 4 ("Claim").

Also, within his Claim, McCann alleged the government failed to comply with an earlier request for records brought pursuant to the Freedom of Information Act (FOIA). Evidently the government had stated the requested records would be produced by February 1, 2025.

Ultimately, the Bureau of Prisons (BOP) denied the Claim, and McCann timely filed suit in this Court. In the Complaint he asserts the government and its employees acted negligently or negligently failed to act in the following ways:

> a. In failing to properly monitor [McCann] at FCI Edgefield;
>
> b. In failing to properly train, monitor and supervise its personnel agents and/or employees so as to ensure the safety of the inmates (including [McCann]) located at FCI Edgefield;
>
> c. In failing to adhere to prison policies, procedures, and/or training on supervision of the SHU;
>
> d. In failing to adhere to prison policies, procedures, and/or training regarding cell checks and classification in the SHU;
>
> e. In failing to have appropriate policies and procedures in place to provide for the safety and wellbeing of the inmate population at FCI Edgefield, to include [McCann]; if such policies exist, in failing to follow the same;
>
> f. In failing to protect [McCann];
>
> g. In failing to provide any level of security in SHU during the required time period for cell checks and oversight to prevent injuries to [McCann];
>
> h. In failing to provide any level of security in SHU for a significant period of time after [McCann] suffered obvious harm;
>
> i. In failing to recognize a medical emergency;
>
> j. In failing to respond to a medical emergency in a timely manner;
>
> k. In failing to hire and retain adequately trained and appropriate correctional staff to prevent harm to the inmate population – to include [McCann];
>
> l. In failing to provide adequate and appropriate security officers at FCI Edgefield;
>
> m. In failing to provide the appropriate number of correctional staff at SHU in FCI Edgefield;

n. In allowing harm to [McCann] and failing to provide subsequent aid in timely manner; and

o. In all other failures, deviations, and/or grossly negligent conduct as may be discovered throughout the pendency of this litigation.

Compl. ¶ 21. The government then filed its motion to dismiss, to which McCann filed a response. The government then filed a reply.

In the Report the Magistrate Judge grouped McCann's claims into three categories: "(1) negligence claims concerning what BOP did, or did not do, prior to [McCann's] assault, (2) medical negligence claims concerning BOP's response to [McCann's] assault, and (3) negligent hiring, supervision, and training claims." Report at 4. He recommends denying the government's motion to dismiss as to the first category of claims but granting the motion as to the second and third categories.

Also, for clarity, although the Magistrate Judge and parties sometimes refer to some of McCann's claims as concerning BOP's "medical negligence" or "medical response," *e.g.* Report at 4, 9, 11, 15, McCann is clear he "does not assert a cause of action . . . or allegations of medical negligence or medical malpractice . . . ." Pl. Memo. in Opp. to Def. Mot. to Dismiss at 3. He declines to challenge the propriety of any of the medical care he received. *See* Pl. Obj. at 2 ("[McCann]'s claims relate directly to operational security failures, not medical treatment decisions . . . ."). Rather, he contends, in essence, the care was untimely and BOP should have more quickly begun administering the care.

Both McCann and the government filed objections to the Report, and each party filed responses to those objections and replies to those responses. McCann also "incorporated" a motion to strike the government's objections into his response to the government's objections.

## III. STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## IV. DISCUSSION AND ANALYSIS

### *A. Whether McCann Adequately Exhausted his Claims*

The FTCA requires "administrative exhaustion" as a "jurisdictional prerequisite" to judicial review. *Estate of Van Emburgh ex rel. Van Emburgh v. United States*, 95 F.4th 795, 800 (4th Cir. 2024) (citing 28 U.S.C. § 2675). Exhaustion requires a plaintiff to "present" the claim to the agency and to "state the sum they are seeking for their claim." 95 F.4th at 801 (citing 28 U.S.C. § 2675(a), (b)). "[A] claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . written notification of an incident, accompanied by a claim for money damages in a sum certain . . . ." 28 C.F.R. § 14.2

The government contends McCann failed to adequately present the substance of several of his claims. Gov. Obj. 1-3. Under the FTCA, a claim must be stated in a way "sufficient to enable the agency to investigate." *Ahmed v. United States*, 30 F.3d 514, 517 (4th Cir. 1994) (quoting *Adkins v. United States*, 896 F.2d 1324, 1326 (11th Cir. 1990)). The requirement is one of "minimal notice" so as to "enable the agency to investigate and ascertain the strength of a claim." *GAF Corp. v. United States*, 818 F.2d 901, 920 (D.C. Cir. 1987).

The government argues McCann failed to present a claim "regarding BOP's dealings with its employees, i.e., alleged failures to 'train, monitor and supervis[e] its personnel,' alleged failures to 'hire and retain,' and alleged failures to 'provide adequate and appropriate staff.'" Motion at 5 (quoting Compl. ¶ 21).

McCann's submission to BOP described the basis of his claim as follows:

> On August 4, 2023, Michael McCann was housed in the Special Housing Unit (SHU) of FCI Edgefield, which houses inmates who have been separated from the general population. Mr. McCann was found on and/or around 2:15pm, unresponsive and in flexor position after an assumed severe assault. Mr. McCann was brought to FCI medical and it was noted that he had significant trauma to the left side of his face and left eye deformity. His left eye was unable to be identified and was subsequently found on the floor of his cell. Edema, erythema and hematomas were noted. Mr. McCann was placed in a C-Collar, administered Narcan by the SHU staff around 2:00pm, 2:12pm, and 2:15pm with no response. His eye pupils were not responsive to light stimulation and erythema was noted around his neck on both sides. Mr. McCann suffered an anoxic brain injury and left eye enucleation. He was admitted to the trauma surgery unit at August University and placed on mechanical ventilation, pressors, and sedatives. [He then received further treatment.] Mr. McCann's hypoxic injury has also caused neurological deficits, memory issues, and the need for assistance in all aspects of ADLs.
>
> The staff, correctional officers, supervisors and/or administrators not only failed to properly monitor the SHU, but failed to properly supervise inmates and have proper checks.

Claim at 2, 4.

The Magistrate Judge considered the government's argument but declined to make a recommendation as to whether these claims were exhausted because he concluded the challenged categories of claims fail under the discretionary function exemption to the FTCA, 28 U.S.C. § 2680(a), an exception to Congress's waiver of sovereign immunity and which is addressed further below.

The government objects to avoiding this issue and insists the above claims—particularly those concerning training or staff supervision and the medical response—were inadequately presented. Gov. Obj. at 2. Because FTCA exhaustion is jurisdictional, the Court will address this argument first. *See Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 201 (4th Cir. 2019) (noting courts "must generally decide jurisdictional questions first").

McCann insists the exhaustion requirement "is not onerous" and was satisfied by his written statement describing the basis for his claim. Pl. Response to Gov. Obj. at 2. The Claim stated he was found after "an assumed severe assault," very extensively described his injuries, and then claimed "staff, correctional officers, supervisors and/or administrators not only failed to properly monitor the SHU, but failed to properly supervise inmates and have proper checks." Claim at 4.

The government specifically contends an "allegation of failing to properly supervise inmates does not equate to a claim that the Bureau of Prisons negligently hired personnel, negligently supervised those personnel, or negligently trained those personnel." Gov. Obj. at 2. This argument must be rejected because McCann specifically asserted the supervisors and administrators, along with the staff and correctional officers, were to blame for the failure to "properly supervise inmates and have proper checks." Claim at 4. The only way in which an administrator can reasonably be blamed for improper checks is if the administrator inadequately hired, trained, or supervised personnel. Thus, he placed the government on sufficient notice to investigate his injuries as well as these potential causes.

The government further asserts the inadequate presentment "is even more pronounced as to [McCann]'s allegations surrounding the medical response to the incident." Gov. Obj. at 2.

Again, for clarity, McCann challenges the timeliness of his discovery and care rather than the propriety or reasonableness of the care itself.

In the Claim McCann stated he was found unresponsive and severely injured and he asserted BOP staff "failed to properly monitor" and "failed to . . . have proper checks." Claim at 4. It is a reasonable inference therefrom McCann alleged the government failed to timely discover him following the assault or to adequately respond to the discovery. Were McCann bringing medical malpractice claims, there may be merit to the government's argument. But he has been exceptionally clear he declines to bring such claims. As to timeliness, however, McCann's Claim sufficiently presented the issue because the presentment requirement is "not a particularly high bar." *Abbott v. United States*, 78 F.4th 887, 896 (6th Cir. 2023).

In sum, all which was necessary is the Claim present "written notification of an incident." 28 C.F.R. § 14.2. McCann clearly notified BOP of his assault and injuries, and it had reason to investigate the assault and his allegedly untimely discovery. That was sufficient presentment because the statute "does not require that a particular theory of liability be presented; instead, it requires only that the 'the claim' be submitted 'to the appropriate Federal agency.'" *Abbott*, 78 F.4th at 897 (quoting 28 U.S.C. § 2675(a)). McCann's Claim adequately stated all of the claims now asserted in the complaint, and the government's objection on this point will be overruled.

Additionally, McCann insists the government's "so-called objections must do more than simply rehash the arguments that were originally made" and therefore should be overruled. Pl. Response to Gov. Obj. at 1. This argument appears to be the basis for McCann's motion to strike, but it is unclear. Regardless, he is incorrect. "[D]istrict courts must solely consider the specificity, not the novelty, of objections to magistrate recommendations." *Elijah v. Dunbar*, 66 F.4th 454, 461 (4th Cir. 2023). That the objections "resemble[] arguments [the government] had made

previously" fails to serve as a barrier to de novo review. *Id.* Accordingly, McCann's motion to strike in his response to the government's objections will be denied.

### *B. Whether the Discretionary Function Exception Bars McCann's Claims*

As noted above, one exception in Congress's waiver of sovereign immunity is the discretionary function exception, which applies to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a). "FTCA plaintiffs have the burden of showing that the discretionary function exception does not foreclose their claim." *Sanders v. United States*, 937 F.3d 316, 327 (4th Cir. 2019) (quoting *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 857 (4th Cir. 2016)).

The exception applies where "the conduct in question 'involves an element of judgment or choice.'" *Wood v. United States*, 845 F.3d 123, 128 (4th Cir. 2017) (quoting *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). On the other hand, "[w]hen a statute, regulation, or policy prescribes the employee's conduct, the conduct cannot be discretionary and thus is unprotected by the discretionary function exception." *Sanders*, 937 F.3d at 328 (quoting *Wood*, 845 F.3d at 128)).

#### 1. McCann's Objections

As the Court observed earlier, the Magistrate Judge grouped McCann's claims into three categories: "(1) negligence claims concerning what BOP did, or did not do, prior to [McCann's] assault, (2) medical negligence claims concerning BOP's response to [McCann's] assault, and (3) negligent hiring, supervision, and training claims." Report at 4. He recommends denying the government's motion to dismiss as to the first category of claims but granting the motion as to the second and third categories. According to the Magistrate Judge, the discretionary function exception bars the latter two categories of McCann's claims because he "fail[ed] to identify

specifically which policy or procedure is being referenced in support of his medical negligence [response] claim or his negligent hiring, supervision, and training claims." Report at 11.

As to the second category of claims, those addressing BOP's response following the assault, the Magistrate Judge reasoned McCann "fails to identify a policy mandating a period [of time] in which BOP must respond to an emergency and provide aid or mandating how or when staff must recognize a medical emergency." Report at 12. McCann objects to this conclusion, arguing the Magistrate Judge "misconstrue[d] the nature of [his] allegations regarding a medical emergency or timeliness of rendering aid." Pl. Obj. at 2.

Specifically, McCann claims BOP negligently failed to discover him in a timely manner following the assault, and he contends BOP failed to comply with section 310 of the Correctional Services Procedure Manual (CSPM). Pl. Obj. at 1-2. That section provides:

> A staff member must observe all inmates confined in continuous locked down status . . . at least once in the first 30 minute period of the hour (example, 12:00 a.m. - 12:30 a.m.) followed by another round in the second 30 minute period of the same hour (example, 12:30 a.m. – 1:00 a.m.), thus ensuring an inmate is observed at least twice per hour. These rounds are to be conducted on an irregular schedule and no more than 40 minutes apart.

CSPM § 310. Accordingly, the manual required BOP to observe McCann at least every forty minutes, and BOP therefore lacked discretion to do otherwise.

McCann alleges BOP failed to observe him as required, and thus follow his negligence claims for BOP "failing to properly monitor" him, "failing to adhere to prison policies . . . on supervision of the SHU," "failing to adhere to prison policies . . . regarding cell checks," "failing to provide any level of security in SHU during the required time period for cell checks and oversight to prevent injuries to [him]," "failing to provide any level of security in SHU for a significant period of time after [McCann] suffered obvious harm," "failing to recognize a medical

emergency," "failing to respond to a medical emergency in a timely manner," and "failing to provide subsequent aid in [a] timely manner." Compl. ¶ 21(a), (c)-(d), (g)-(j), (n).

Accepting as true McCann's allegation BOP failed to perform timely cell checks as required by CSPM, all of the above claims plausibly flow from the alleged violation of the CSPM. The government declined to address McCann's theory on this point in its reply to his objections to the Report. Therefore, the objection will be sustained; the Court will decline to adopt the Magistrate Judge's suggestion to dismiss McCann's above claims on the basis of the discretionary function exception.

As already stated, the Magistrate Judge also concluded McCann "failed to carry his burden to show that the discretionary function exemption does not apply to his negligent hiring, supervision, and training claims." Report at 12. McCann's second objection is to this recommendation his negligent training claim be dismissed. He does, however, "acknowledge[] precedent" indicating hiring and supervision are discretionary functions, but he insists there is a relevant training policy which mandated other actions. Pl. Obj. at 4.

Specifically, McCann offers BOP's Special Housing Units Program Statement as the policy BOP allegedly violated. It provides in relevant part: "Completion of quarterly training will be required for staff assigned to SHU prior to the start of each new quarter, regardless of how many times a staff member has completed training." Pl. Memo. in Opp. to Def.'s Mot. to Dismiss, Ex. 2 ("Program Statement"). Therefore, to the extent McCann alleges BOP employees failed to complete required training, the discretionary function exception is inapplicable. BOP lacked discretion to allow employees to be trained less frequently. Accordingly, this objection will also be sustained. Consequently, the Court will decline to adopt the Magistrate Judge's suggestion the

Court dismiss McCann's negligent training claim on the basis of the discretionary function exception.

To the extent McCann claims BOP was negligent in the hiring or supervision of its personnel, he has waived those claims by failing to specifically object to the Magistrate Judge's recommendation they be dismissed due to the discretionary function exception. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) ("[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" (quoting Fed. R. Civ. P. 72 advisory committee's note)). Moreover, "[c]ourts have repeatedly held that government employers' hiring and supervisory decisions are discretionary functions." *Suter v. United States*, 441 F.3d 306, 313 n.6 (4th Cir. 2006).

**2. Government's Objections**

Again, as stated, the Magistrate Judge recommends denying the government's motion as to McCann's "negligence claims concerning what BOP did, or did not do, prior to [McCann's] assault." Report at 4. More specifically, he suggests denying the government's motion to dismiss McCann's claim "BOP was negligent concerning actions taken, or not taken, prior to the assault," including, "for example, that BOP failed 'to provide any level of security in SHU during the required time period . . . .'" Report at 14 (quoting Compl. ¶ 21(g)).

The government objects to, in its view, the Magistrate Judge expanding the scope of conduct required by the CSPM beyond regular cell checks. It insists "any other actions" McCann contends "should have been performed prior to the assault, are not mandatory, and are discretionary." Gov. Obj. at 4. It particularly objects to "the Magistrate Judge's failure" to specifically consider McCann's claims for: "(1) failure to adhere to prison policies, procedures,

and/or training regarding classification; and (2) failure to have appropriate policies and procedures in place for the safety and wellbeing of the inmate population." Gov. Obj. at 4.

As to the first objection, the government is partially correct. The CSPM provision requires only regular checks; it is silent as to the classification of inmates. McCann failed to identify a specific policy as to his claim BOP failed "to adhere to prison policies [and] procedures . . . regarding . . . [inmate] classification in the SHU." Compl. ¶ 21(d). Thus, to the extent the Magistrate Judge relied on the CSPM to support this claim, that was error.

On the other hand, McCann also alleged BOP failed to adhere to "training" regarding classification. This allegation, at the pleading stage, is sufficiently covered by the Program Statement training requirements, and thus the discretionary function exception is inapplicable to it for the reasons explained above. Thus, this objection will be overruled in part and sustained in part.

As to the second objection, the Court again agrees with the government. BOP has a statutory duty to "provide for the safekeeping" and "protection" of inmates. 18 U.S.C. § 4042(a)(2)-(3). These "broad directives," however, provide BOP "discretion regarding the implementation of those mandates." *Rich v. United States*, 811 F.3d 140, 145 (4th Cir. 2015). The creation of "appropriate policies" is plainly an exercise of discretion, and it is "precisely the kind of determinations that the discretionary function exception is intended to protect." *Rich*, 811 F.3d at 146. Accordingly, this objection will be sustained.

**3. Discretionary Function Exception Conclusion**

Based on the foregoing analysis, McCann has two types of claims which survive the discretionary function exception. First, his claims related to BOP's alleged failure to perform regular checks survive the discretionary function exception. This category includes his allegations

BOP failed to properly monitor, failed to adhere to policies and procedures on supervision, and failed to adhere policies and procedures concerning cell checks. Also, to the extent the alleged failures stem from violations of the CSPM, the following claims also survive: BOP failed to protect McCann, failed to provide "any level of security" during cell checks and after McCann "suffered obvious harm," failed to recognize a medical emergency, failed to response to a medical emergency in a timely manner, and in "allowing harm to [McCann] and failing to provide subsequent aid in a timely manner." Compl. ¶ 21.

Second, McCann's claims related to alleged training failures in violation of the SHU Program Statement also survive. This category includes his allegations BOP failed to properly train its personnel, failed to adhere to prison policies and procedures, failed to provide adequate and appropriate security officers or security, failed to adequately or timely respond to his medical emergency, and failed to protect him. Again, however, they survive only insofar as they are a result of the alleged failure to follow the mandatory training procedure in the Program Statement.

### *C. Whether McCann's remaining claims fail under Rule 12(b)(6) of the Federal Rules of Civil Procedure*

The government argues McCann's claims fail as a matter of law even if the discretionary function exception is inapplicable.

A negligence claim in South Carolina requires the plaintiff to prove: "(1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach." *Carolina Chloride, Inc. v. Richland Cnty.*, 714 S.E.2d 869, 873 (S.C. 2011) (quoting *Tanner v. Florence Cnty. Treasurer*, 521 S.E.2d 153, 158 (S.C. 1999)).

The first element is indisputably met because, as mentioned above, BOP has a statutory duty to provide for the safekeeping and protection of inmates. It is also inarguable McCann suffered severe harm and damages. Thus, only the breach and causation elements are in dispute.

**1. *Whether McCann states a claim for the alleged failure to perform timely checks***

The Magistrate Judge determined McCann made sufficient allegations "concerning BOP actions taken, or not taken, prior to the assault." Report at 15. Given the Court's prior determinations, this claim now concerns solely BOP's alleged failure to follow the policy requiring regular cell checks.

The government objects to the Magistrate Judge's conclusion, arguing McCann "failed to allege how BOP violated this policy, nor does he allege how this alleged policy violation was the proximate cause of his injuries." Gov. Obj. at 6. In its view, the complaint fails to "alleg[e] any facts to suggest how BOP may have acted improperly." Gov. Obj. at 6.

The government overlooks McCann's clear allegation BOP "fail[ed] to provide any level of security" during the "time period for cell checks" and "for a significant period of time after [he] suffered obvious harm." Compl. ¶ 21(g), (f). Further, he alleges BOP "fail[ed] to respond to a medical emergency in a timely manner." Compl. ¶ 21(j). These allegations, for example, are sufficient to support a negligence claim.

In particular, the timeliness allegation is a clear assertion of breach—i.e., BOP breached its duty because it should have responded more quickly. Further, there is a reasonable inference a swifter response—perhaps one in compliance with the policy—could have reduced McCann's physical damage and suffering following the assault. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (citation omitted) ("In ruling on a 12(b)(6) motion, a court 'must accept as true all of the factual allegations contained in the

complaint' and 'draw all reasonable inferences in favor of the plaintiff.'"). Thus, McCann alleges damages which were proximately caused by BOP's conduct, and he therefore satisfies all of the elements of a negligence claim for the alleged infrequent cell checks. The government's objection will therefore be overruled.

*2. Whether McCann states a claim for the alleged failure to train*

Because the Magistrate Judge recommended dismissing the failure to train claim, the Report fails to consider the government's motion to dismiss it for failing to state a claim. In the government's motion to dismiss, it relies heavily on cases focused on negligent supervision or hiring. The Court has already determined it will dismiss those claims for the reasons given above.

As to training specifically, however, the Court concludes the complaint sufficiently states a claim. First, again, BOP's duty is clearly established by statute and regular training is required by the Program Statement. Second, McCann alleges BOP personnel failed to complete the mandatory training. It is reasonable to assume staff will be taught about the necessary frequent checks or how to respond to emergency medical situations. Especially given the clear strictness provided by the CSPM—e.g., by requiring quarterly training "regardless of how many times a staff member has completed training"—a reasonable inference arises training might have covered situations like McCann's. Thus, he alleged causation. Finally, McCann plainly suffered damages. Accordingly, the Court declines to grant the government's motion in this regard.

**D. *Whether to Sustain McCann's Remaining Objections***

McCann has two remaining objections. First, he argues the Magistrate Judge "improperly characterize[d]" his "post-assault security claim." Pl. Obj. at 1. In the Report, the Magistrate Judge specifically identified one category of his claims as for BOP's negligence "prior to" his assault. Report at 4. Essentially, McCann objects to the extent the Report limits his claims to

negligence arising prior to his assault. The government's response to McCann's objections fails to address this point.

McCann expressly alleged in the complaint BOP failed "to provide any level of security in SHU for a significant period of time after [he] suffered obvious harm." Compl. ¶ 21(h). Therefore, the objection will be sustained to the extent McCann's claims for BOP's alleged failures following the assault survive the Court's preceding analysis.

McCann's second remaining objection concerns earlier document requests. In his response in opposition to the motion to dismiss he argued the government failed to timely respond to his FOIA request. He wrote: "Defendant's violative conduct in failing to provide [him] with responsive documents to his records request in a timely manner severely limited [his] ability to further investigate any further potential misconduct and presents extreme prejudice." Pl. Memo. in Opp. to Def. Mot. to Dismiss at 4. The Magistrate Judge failed to address this contention in the Report, and McCann objects to that failure.

Following an interrogatory from this Court about the matter, the parties represent McCann has still yet to receive the documents he sought. The government, however, states it "will issue a determination letter and provide responsive records, subject to any FOIA exemptions, no later than September 11, 2026." Response to Order to Show Cause at 2. Given the government's cooperation, to the extent McCann's objection sought these records, the objection is sustained.

## V. CONCLUSION

For the reasons explained above, and after a thorough review of the record in this case pursuant to the standard set forth above, the government's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**, as described above.

The government's objections to the Report are overruled in part and sustained in part, as described above. McCann's objections to the Report are also overruled in part and sustained in part, as described above. The Report is adopted and incorporated herein to the extent it is consistent with this Order. McCann's motion to strike is **DENIED**.

**IT IS SO ORDERED.**

Signed this 14th day of September, 2026, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE